IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ALISHA JEAN HARSHEY, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Civil Action No. 12-1112 |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) | Magistrate Judge Cynthia Reed Eddy |
| Defendant. | ) ) |  |

MEMORANDUM OPINION

I. Introduction

Plaintiff Alisha Jean Harshey ("Harshey") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 8 & 10. For the reasons that follow, Harshey's motion for summary judgment [ECF No. 8] will be denied, and the Commissioner's motion for summary judgment [ECF No. 10] will be granted. In accordance

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue. Social Security History-Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (as visited on February 15, 2013). Consequently, Acting Secretary Colvin is now the official-capacity defendant in this action. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); FED. R. CIV. P. 25(d).

1

with the fourth sentence[2] of § 405(g), the Commissioner's decision denying Harshey's application for SSI benefits will be affirmed.

## II. Procedural History

Harshey protectively applied for SSI benefits on March 3, 2008, alleging that she had become "disabled" on January 1, 2007. R. at 18, 111. Pennsylvania's Bureau of Disability Determination denied the application on August 15, 2008. R. at 84. Harshey responded on November 18, 2008, by filing a request for an administrative hearing. R. at 18. On June 22, 2010, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge ("ALJ") Guy Koster. R. at 28. Harshey appeared *pro se* and gave testimony relating to her abilities and limitations. R. at 30-54. Samuel E. Edelmann ("Edelmann"), an impartial vocational expert, also testified at the hearing. R. at 54-57. In a decision dated September 22, 2010, the ALJ determined that Harshey was not "disabled" within the meaning of the Act. R. at 15-25.

Shortly after receiving notice of the ALJ's decision, Harshey retained an attorney. R. at 13. On October 22, 2010, Harshey sought administrative review of the ALJ's decision by filing a timely request for review with the Appeals Council. R. at 12-13. She submitted documentary evidence to the Appeals Council that had not been presented to the ALJ. R. at 4-5. The Appeals Council denied Harshey's request for review on June 11, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1.

Harshey commenced this action on August 7, 2012, seeking judicial review of the Commissioner's decision. ECF No. 1. Harshey and the Commissioner filed motions for summary judgment on December 10, 2012, and January 10, 2013, respectively. ECF Nos. 8 &

---

[2] The applicable statutory language provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

10. In accordance with 28 U.S.C. § 636(c)(1), the parties have given their consent to have this matter adjudicated by a United States Magistrate Judge. ECF Nos. 6 & 7.

### III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777

(3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is

4

> determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV. The ALJ's Decision

In his decision, the ALJ determined that Harshey had not engaged in substantial gainful activity subsequent to the date of her application. R. at 20. Harshey was found to be suffering

from bipolar affective disorder and an unspecified depressive disorder. R. at 20. These impairments were deemed to be "severe" under the Commissioner's regulations. R. at 20; 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Harshey's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 20-22.

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Harshey's "residual functional capacity"[3] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, routine, repetitive tasks that do not require her to maintain a production rate pace. She can tolerate few changes in the work setting. She can deal only occasionally with coworkers, supervisors, and the public.

R. at 22. Although Harshey had previously worked in several restaurants, the ALJ concluded that such work activity did not constitute "past relevant work"[4] as that term is defined in the Commissioner's regulations. R. at 24, 39-46. Consequently, it became necessary for him to consider the relevant vocational factors in order to determine whether Harshey was capable of performing other work existing in the national economy. R. at 24.

Harshey was born on August 12, 1985, making her twenty-two years old on the date of her application and twenty-five years old on the date of the ALJ's decision. R. at 24, 36. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §

---

[3] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[4] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

6

416.963(c). She had a "limited education"[5] and an ability to communicate in English. R. at 24, 37-38, 124, 129; 20 C.F.R. § 416.964(b)(3), (5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Harshey could work as a motel cleaner, an office cleaner, or a stocker. R. at 24. Edelmann's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[6] R. at 57.

## V.     Discussion

The Commissioner's regulations permit a claimant to present "new and material evidence" to the Appeals Council in support of his or her request for review. 20 C.F.R. § 416.1470(b). In support of her request for review, Harshey submitted evidence to the Appeals Council that had not been available at the time of the ALJ's decision. R. at 4-5. This Court has jurisdiction to review only the Commissioner's "final decision" denying Harshey's application for SSI benefits. *Califano v. Sanders*, 430 U.S. 99, 108-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). When the Appeals Council denied Harshey's request for review, the ALJ's decision became the "final decision" of the Commissioner in this case. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The Act does not authorize judicial review of the Appeals Council's decision denying the request for review. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Since Harshey

---

[5] Documentary evidence submitted to the Appeals Council indicates that Harshey withdrew from Jeannette High School roughly one month after beginning the ninth grade. R. at 155. She apparently began a home schooling program shortly thereafter. R. at 155. Harshey testified that she had never obtained a General Educational Development ("GED") certificate. R. at 38. The extent of her home schooling is not clear from the record. Nevertheless, a report describing the results of Harshey's first psychiatric evaluation states that she "dropped out of school" when she was in the eleventh grade. R. at 193.

[6] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

does not move for a remand pursuant to the sixth sentence[7] of § 405(g), the Court can consider only the evidence that was available to the ALJ at the time of his decision.[8] *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011); *Matthews*, 239 F.3d at 592-595.

Dr. Nabil Jabbour, Harshey's primary care physician, examined Harshey on May 21, 2008. R. at 159, 161. The physical examination yielded "essentially normal" results. R. at 159, 161. Nonetheless, Dr. Jabbour determined that Harshey was suffering from "bipolar depression." R. at 159, 161. Harshey was given prescriptions for Zyprexa and Lexapro in order to alleviate her symptoms. R. at 159, 161.

On August 11, 2008, Dr. Charles M. Cohen performed a consultative psychological examination of Harshey in connection with her application for SSI benefits. R. at 166-172. In the narrative portion of his examination report, under the "prognoses" heading, Dr. Cohen stated as follows:

> Prognoses are guarded. This woman reports mood swings. Today her affect was essentially stable. Her concentration was fair. She reports chronic problems with attention and concentration. She reports a history of special education. Based on today's examination, she appears to be capable of coming to work on time, of dealing reasonably well with authority figures and peers and she would be able to concentrate well enough to perform simple repetitive tasks. It would probably be useful to have her seen for IQ and achievement testing to better understand her learning problems.

R. at 168. Dr. Cohen indicated that Harshey had "marked" limitations in her abilities to understand, remember and carry out detailed instructions. R. at 171. Harshey was found to have

---

[7] The sixth sentence of § 405(g) provides that a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The standards governing the propriety of a sentence-six remand were discussed by the United States Court of Appeals for the Third Circuit in *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833-834 (3d Cir. 1984).

[8] The evidence discussed on pages 8 and 9 of Harshey's brief was never presented to the ALJ and, therefore, cannot be considered at this time. ECF No. 9 at 8-9; R. at 4-5, 154-157, 205-269.

8

"moderate" limitations in her abilities to understand, remember and carry out short, simple instructions, make judgments concerning simple work-related decisions, respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors, co-workers, and members of the general public. R. at 171. Dr. Cohen placed question marks next to the checkmarks identifying the "moderate" limitations in Harshey's abilities to understand, remember and carry out short, simple instructions. R. at 171. Beneath a question seeking the "medical/clinical finding(s)" supporting his assessment, Dr. Cohen left a notation reading, "Need IQ & achievement testing." R. at 171.

Dr. Jan Melcher, a non-examining psychological consultant, opined on August 15, 2008, that Harshey was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." R. at 176. Dr. Melcher viewed Dr. Cohen's examination report as "an overestimate of the severity of [Harshey's] functional restrictions." R. at 175. Referring to that report, Dr. Melcher stated:

> The examining source statements in the report concerning the claimant's abilities in the areas of making occupational adjustments, making performance adjustments, making personal and social adjustments and other work related activities are not consistent with all of the medical and non-medical evidence in the claims folder. It appears that the examining psychologist relied heavily on the subjective report of symptoms and limitations provided by the claimant. However, the totality of the evidence does not support the claimant's subjective complaints. The evidence provided by the examining source reveals only a snapshot of the claimant's functioning and is an overestimate of the severity of her limitations. Therefore, great weight cannot be given to the examining source's opinion.

R. at 175-176. Although Harshey was deemed by Dr. Melcher to have some "moderate" limitations, no "marked" limitations were identified. R. at 173-174. Dr. Melcher's opinion

9

appears to have been premised, at least in part, on the fact that Harshey had no history of mental health treatment. R. at 189.

Acting on the advice of Dr. Jabbour, Harshey sought treatment at Westmoreland Hospital's Outpatient Behavioral Health Clinic. R. at 48, 190-199. Dr. Saghir Ahmad, a psychiatrist affiliated with Westmoreland Hospital, evaluated Harshey on October 16, 2008. R. at 193-194. Harshey complained of "easy agitation" and "mood swings." R. at 193. Dr. Ahmad concluded that Harshey was suffering from bipolar disorder. R. at 194. He assigned her a Global Assessment of Functioning ("GAF") rating of forty-five.[9] R. at 194. After discussing "the possible risks and benefits" of medication, Dr. Ahmad gave Harshey prescriptions for Abilify and Benadryl. R. at 194. Doxepin was added to Harshey's medication regimen on April 21, 2009. R. at 199. After that appointment, Harshey did not return to Dr. Ahmad's office. R. at 50. She stopped taking her medications three months later. R. at 50. Harshey was not taking any medications for her impairments at the time of the hearing. R. at 49.

After Harshey was caught selling drugs, the Restrictive Intermediate Punishment/Alternative Treatment Services ("RIPATS") program referred her to the Behavioral Health Clinic operated by Southwestern Pennsylvania Human Services, Inc. R. at 200. After evaluating Harshey on June 4, 2010, a treating psychiatrist[10] gave her a GAF score of sixty-five.[11] R. at 202-204. On June 14, 2010, a counselor[12] noted that Harshey was not interested in

---

[9] "The Global Assessment of Functioning ('GAF') scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's [level of] psychological, social and occupational function[ing]." *Taliaferro v. Astrue*, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011). A GAF score falling between forty-one and fifty is *sometimes* indicative of an individual exhibiting "serious impairment in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in this range *may* be "unable to keep a job." *Id.*
[10] The name of the psychiatrist is illegible. R. at 204.
[11] A GAF score falling between sixty-one and seventy is indicative of an individual exhibiting only "mild symptoms." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34.
[12] The name of the counselor is illegible. R. at 201.

10

receiving treatment, and that she had sought treatment only because RIPATS was requiring her to seek mental health services. R. at 200-201. The counselor described Harshey as "guarded," "sarcastic" and "negative." R. at 201. When Harshey was offered "individual services," she apparently responded by saying, "No, I don't think I need anything." R. at 201. Harshey's encounter with the counselor preceded the hearing by only eight days. R. at 28, 202-204. Since Harshey had resisted the provision of mental health treatment shortly before testifying that her mental impairments rendered her incapable of working, the ALJ found her testimony to be lacking in credibility. R. at 22-23.

At the beginning of the hearing, Harshey was repeatedly informed of her right to be represented by an attorney or a lay representative.[13] R. at 30-31. She was also told that she may have qualified for free legal assistance. R. at 31. Despite the ALJ's admonitions, Harshey signed a waiver declaring her intention to proceed without counsel. R. at 31-32. It is clear from the record that Harshey's waiver was voluntary. Under these circumstances, her lack of representation at the hearing provides no independent basis for disturbing the ALJ's decision. *Hess v. Secretary of Health, Education & Welfare*, 497 F.2d 837, 840, n. 4 (3d Cir. 1974).

Because "Social Security [disability] proceedings are inquisitorial rather than adversarial," the Commissioner has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 110-111 (plurality opinion). In this vein, an administrative law judge "owes a duty to a *pro se* claimant to help him or her develop the administrative record." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). Since Harshey appeared *pro se*, the ALJ was required to "assume a more active role" in trying to uncover evidence of disabling impairments. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979).

---

[13] The Act permits non-attorneys to represent claimants in Social Security disability proceedings conducted before the Commissioner. 42 U.S.C. § 406(a)(1).

11

A careful review of the record reveals that the ALJ fulfilled his obligations to Harshey. Harshey testified that she had started to see a mental health counselor roughly two weeks prior to the hearing. R. at 32. When questioned by the ALJ, Harshey was unable to provide the name and address of her counselor. R. at 32-34. The ALJ gave Harshey an additional fifteen days to submit information about her treatment sessions. R. at 33. He also provided her with information about how to seek assistance from the SSA in obtaining that information. R. at 57-58. The existing administrative record consists only of the exhibits admitted at the hearing and the exhibits submitted to the Appeals Council in support of Harshey's request for review. R. at 4-5, 34-35. Harshey apparently neglected to seek or obtain the documentary evidence requested by the ALJ. As the patient seeking treatment, she was in the best position to provide information about her own medical condition. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Given that Harshey could not even identify her treating therapist by name, the ALJ cannot be faulted for failing to investigate the matter further. R. at 32-34. He was not required to act as Harshey's counsel. *Musgrave v. Sullivan*, 966 F.2d 1371, 1377 (10th Cir. 1992).

Harshey maintains that the ALJ erred in failing to order the Intelligence Quotient ("IQ") and "achievement" testing suggested by Dr. Cohen. ECF No. 9 at 11-13. Contrary to Harshey's belief, the ALJ's "duty to develop the record" did not include an obligation to order testing that he did not believe to be necessary to facilitate an accurate decision in this case. *Thompson v. Halter*, 45 Fed.Appx. 146, 149 (3d Cir. 2002)(unpublished). Based on his examination, Dr. Cohen determined that Harshey could report for work on time, "deal[] reasonably well with authority figures and peers," and "concentrate well enough to perform simple repetitive tasks." R. at 168. He observed that "IQ and achievement testing" would shed light on Harshey's

"learning problems." R. at 168. At the hearing, the ALJ asked Harshey whether she had ever undergone an "IQ test." R. at 39. Harshey was unsure as to whether such a test had been performed. R. at 39. In response to follow-up questions posed by the ALJ, Harshey clarified that she had basic reading skills. R. at 39. The ALJ instructed Edelmann to identify jobs existing in the national economy for "an individual of the same age, education, [and] past work history as the claimant." R. at 56. Edelmann testified that an individual with Harshey's educational background could work as a hotel cleaner, an officer cleaner, or a stocker. R. at 57. In light of the testimony provided by both Harshey and Edelmann, the ALJ had no reason to believe that the "learning problems" referenced by Dr. Cohen would prevent Harshey from performing the duties of the jobs identified by Edelmann.

The United States Court of Appeals for the Third Circuit has declared that an administrative law judge may not reject competent medical evidence solely on the basis of "his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). In his decision, the ALJ stated that Harshey's treatment history "present[ed] a picture of non-compliance on the one hand, and effective treatment on the other." R. at 23. Harshey accuses the ALJ of substituting his own opinion for that of her treating healthcare providers. ECF No. 9 at 14-16. In support of her position, she points to a treatment note which appears to suggest that her "lack of motivation" was "prevent[ing] her from following up with treatment."[14] ECF No. 9 at 14; R. at 224. That treatment note, however, is contained within Exhibit 9F. R. at 224. Exhibit 9F was submitted to the Appeals Council in support of Harshey's request for review. R. at 4-5. It was never presented to the ALJ. Consequently, it cannot be

---

[14] In its entirety, the treatment note reads as follows:
    Problems that cannot be addressed in treatment or might inhibit treatment:
    HAS POOR MOTIVATION AND MAY HAVE TROUBLE GETTING HERSELF TO ATTEND
    TREATMENT.
R. at 224 (capitalization in original).

13

considered for the purpose of determining whether the ALJ's decision is supported by substantial evidence. *Chandler*, 667 F.3d at 360; *Matthews*, 239 F.3d at 592-595. In any event, the ALJ cannot be said to have "substituted" his own opinion for the medical opinion reflected in an assessment that he never saw in the first place.

On June 4, 2010, a treating psychiatrist assigned Harshey a GAF score of sixty-five. R. at 202-204. The ALJ read that GAF rating to mean that Harshey had "no significant mental symptoms or limitations." R. at 22. Harshey faults the ALJ for referencing that GAF score without considering her three lower GAF scores. ECF No. 9 at 15. Clinician Bobbi L. Yothers ("Yothers") assigned Harshey a GAF score of forty on October 8, 2008. R. at 196. On October 16, 2008, Dr. Ahmad gave Harshey a GAF rating of forty-five. R. at 194. The ALJ did not make reference to the ratings provided by Yothers and Dr. Ahmad. Nonetheless, he specifically observed that Harshey had undergone "effective treatment" between the fall of 2008 and the spring of 2009.[15] R. at 23. Harshey testified that she had stopped taking her medications in June 2009. R. at 50. After going a full year without medicine, she was given a GAF score of sixty-five. R. at 202-204. Since this later GAF score followed periods of both treatment and noncompliance, it was arguably more probative of Harshey's condition than the GAF scores assigned to her at the commencement of her mental health treatment. To the extent that Harshey believes that the ALJ nevertheless erred in failing to address the October 2008 GAF scores, it is worth noting that no direct correlation exists between a claimant's AGF ratings and his or her ability to perform work-related tasks. *Chanbunmy v. Astrue*, 560 F.Supp.2d 371, 383 (E.D.Pa. 2008). The ALJ was not required to discuss evidence that was lacking in probative value or

---

[15] Even if it is assumed that Harshey was unable to work in October 2008, her "disability" did not last long enough to satisfy the Act's twelve-month durational requirement. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). As the ALJ noted in his decision, Harshey reported in April 2009 that she was feeling well. R. at 23, 190.

14

otherwise overwhelmed by countervailing evidence. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008). Dr. Cohen and Dr. Melcher both opined that Harshey could work. R. at 168, 175-176. Eight days before her hearing, Harshey told a counselor that she did not need mental health treatment. R. at 200-201. In light of the overwhelming evidence suggesting that Harshey was capable of working in some capacity, the ALJ's failure to discuss the October 2008 GAF scores does not require a remand for further proceedings. *Davis v. Astrue*, 830 F.Supp.2d 32, 47-48 (W.D.Pa. 2011).

The third GAF score relied upon by Harshey postdated the ALJ's decision by five months. On February 21, 2011, Certified Registered Nurse Practitioner Leslee Blaze ("Blaze") gave Harshey a GAF score of "35 out of 45."[16] R. at 267. Blaze's assessment was never before the ALJ. For the reasons discussed earlier, it cannot be considered at this time. *Chandler*, 667 F.3d at 360; *Matthews*, 239 F.3d at 592-595.

Harshey argues that the ALJ failed to properly evaluate her credibility as a witness.[17] ECF No. 9 at 16-18. An administrative law judge is required to give "serious consideration" to a claimant's subjective complaints whenever the record contains objective evidence of an impairment that could reasonably be expected to cause the symptoms described in the claimant's testimony. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). It does not follow, however, that a claimant's testimony must be credited in every respect. *Chandler*, 667 F.3d at 363. The record indicates that the ALJ properly considered Harshey's testimony. During the

---

[16] An individual with a GAF score falling between thirty-one and forty exhibits *either* "[s]ome impairment in reality testing or communication" *or* "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. Depending on his or her precise circumstances, an individual with a GAF rating in this range *may* be "unable to work." *Id.* It is not clear what Blaze meant when she rated Harshey's GAF at "35 out of 45." R. at 267.

[17] Harshey inexplicably asserts that the ALJ failed to evaluate her credibility pursuant to the criteria outlined in 20 C.F.R. § 416.929(c)(3). ECF No. 9 at 16-17. The ALJ clearly discussed the required evaluation in his decision. R. at 23.

hearing, Harshey testified that she had worked for several different restaurants on a short-term basis. R. at 39-45. She stated that she could not work because of "mood swings" and "fits" of "anxiety." R. at 47. In addition, Harshey explained that she did not like to interact with people. R. at 51. The ALJ addressed those concerns by restricting Harshey to a range of work involving only occasional contact with supervisors, co-workers, and members of the general public. R. at 22. Edelmann testified that an individual with those limitations would not be able to perform the duties of Harshey's prior jobs. R. at 56-57. According to Edelmann, however, those restrictions would not prevent an individual from working as a hotel cleaner, an office cleaner, or a stocker. R. at 56-57. Harshey testified that she had been terminated from some of her prior positions due to an inability to report for work on time. R. at 40, 44. Nonetheless, Dr. Cohen reported that Harshey was "capable of [going] to work on time." R. at 168. The ALJ was free to credit Dr. Cohen's assessment over Harshey's testimony. *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011).

A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony properly incorporates all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is omitted from an administrative law judge's hypothetical question to a vocational expert, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Harshey contends that Edelmann's testimony did not satisfy the Commissioner's burden of production at the fifth step of the sequential evaluation process. ECF No. 9 at 18-19. The hypothetical question posed to Edelmann included every limitation later contained within

the ALJ's residual functional capacity finding. R. at 22, 56. Therefore, Harshey's challenge to the sufficiency of Edelmann's testimony is more appropriately characterized as a direct attack on the underlying residual functional capacity assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

Harshey concedes that the ALJ's residual functional capacity assessment was consistent with the opinion expressed by Dr. Melcher. ECF No. 9 at 16. A careful review of the record reveals that the ALJ similarly accounted for the findings of Dr. Cohen's examination. The only "marked" limitations identified by Dr. Cohen related to Harshey's abilities to understand, remember and carry out *detailed* instructions. R. at 171. The ALJ accommodated those limitations by restricting Harshey to a range of work requiring the performance of only "simple, routine, repetitive tasks." R. at 22. The "moderate" limitations found by Dr. Cohen were also addressed by the ALJ. The ALJ accounted for the limitations relating to Harshey's interactions with others by restricting her to work requiring only occasional contact with supervisors, co-workers, and members of the general public. R. at 22, 171. Harshey's perceived difficulties in "[r]espond[ing] appropriately to work pressures in a usual work setting" were accommodated by the admonition that she could not be required to "maintain a production rate pace." R. at 22, 171. Since Harshey's ability to "[r]espond appropriately to changes in a routine work setting" was deemed to be "moderately" limited, the ALJ determined that she could not tolerate frequent changes in her work setting. R. at 22, 171. To the extent that Harshey believes that the ALJ was required to rule out jobs requiring her to understand, remember and carry out short, simple instructions, she is mistaken. The form completed by Dr. Cohen clearly stated that an individual with a "moderate limitation" was "still able to function satisfactorily" in the relevant area. R. at 170. Since the ALJ's residual functional capacity assessment (and corresponding hypothetical

17

question) properly accounted for all of Harshey's credibly established limitations, Edelmann's testimony satisfied the Commissioner's burden of production. *Johnson*, 529 F.3d at 206.

Before concluding the hearing, the ALJ asked Edelmann whether jobs existed in the national economy for an individual who would be "off task" for more than 50% of a standard workday and miss two or more days of work per month. R. at 57. Edelmann responded in the negative. R. at 57. Harshey relies on Edelmann's answer to the ALJ's question in an effort to impugn the ALJ's decision denying her application for benefits. ECF No. 9 at 19. Her reliance on that portion of Edelmann's testimony is unavailing. Because the ALJ's question described an individual with limitations extending beyond those established by Harshey, Edelmann's answer to that question did not preclude a determination that jobs consistent with Harshey's residual functional capacity existed in the national economy. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987).

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision denying Harshey's application for SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Harshey's motion for summary judgment [ECF No. 8] will be denied, and the Commissioner's motion for summary judgment [ECF No. 10] will be granted. The "final decision" of the Commissioner in this case will be affirmed.

_____
Cynthia Reed Eddy
United States Magistrate Judge

cc: All counsel of record

18